**M–3 & ASSOCIATES, INC.,**
**Plaintiff–Appellant,**

v.

**CARGO SYSTEMS, INC. and Preferred Finishing, Inc., Defendants–Appellees.**

No. 00–1572.

United States Court of Appeals, Federal Circuit.

April 2, 2002.

Rehearing Denied June 11, 2002.

Before MAYER, Chief Judge, BRYSON, and DYK, Circuit Judges.

DYK, Circuit Judge.

This case involves a suit for infringement of U.S. Patent No. 5,768,828 (the

_____

* The clerk should also transmit to the Fifth Circuit the copies of the brief that are in this court's file.

" '828 patent"). The central question is whether the on-sale bar rule invalidates all the claims of the patent because an earlier version of the device accused of infringement was sold more than one year before the filing of the '828 patent application. M–3 & Associates, Inc. ("M–3"), the patentee, appeals the district court's grant of summary judgment finding all the claims of the patent invalid. M–3 also objects to the district court's grant of a motion to strike, which excluded some of M–3's evidence submitted in response to Cargo Systems, Inc., and Preferred Finishing, Inc.'s (collectively, "Cargo") motion for summary judgment. Finally, M–3 complains that the district court improperly considered evidentiary materials accompanying Cargo's summary judgment reply brief, urging that such consideration violated due process. We affirm.

## I

Cargo and M–3 compete in the market for counterbalancing mechanisms that increase the safety of ramp doors by preventing the doors from opening with great force. Counterbalances work so that the springs are tensioned to impart torque on the drive shaft and spools, such that the torque generates the counterbalancing force on the cables. Each coil spring independently provides some portion of the total torque. The amount of torque required is different depending on the height and weight of the ramp door. The number of turns each spring is given determines the level of torque, although this level can be manually adjusted by changing the number of turns in a spring.

M–3 is the assignee of the '828 patent. The invention of the '828 patent involves two redundant springs that independently support the weight of the door and prevent the door from opening abruptly, even if one spring fails. '828 patent, col. 1, II. 58–

67. Cargo makes the accused dual-spring device, which is marketed under the trademark "Ramp–Heister."

The only independent claim of the patent is at issue and provides:

1. An apparatus closing an opening in a wall, comprising:

a door member hinged to the wall adjacent the bottom of the opening so as to permit upward pivotal movement of the door member to close the opening.

a plurality of cables attached to the door member and connected to the wall adjacent the top of the opening, counterbalancing means, connected to the wall adjacent the top of the opening, for applying force to the cables to at least in part counterbalance the weight of the door member and thereby facilitate movement of the door member about the hinge, and

the counterbalancing means including at least two spring elements, each of which independently applies a portion of the force to each of the cables, wherein *each spring element is tensioned so as to be able to independently restrain the door against opening once the door is in a closed position.*

'828 patent, col. 4, I. 54—col. 5, I. 3 (emphasis added).

Cargo claims that the '828 patent is invalid under the on-sale bar provision. An invention is subject to the on-sale bar if it "was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (1994). Since the patent application was filed on May 30, 1996, the critical date is May 30, 1995.

In order to be subject to the on-sale bar, "the invention that is the subject matter of the offer for sale must satisfy each claim limitation of the patent, though it may do

so inherently." *Scaltech, Inc. v. Retec/Tetra, LLC.*, 269 F.3d 1321, 1329, 60 USPQ2d 1687, 1692 (Fed.Cir.2001).

## II

In late March or early April 1994, Cargo sold to Haulmark (a trailer manufacturer) a dual-spring counterbalance. The parties only dispute whether the device sold to Haulmark in 1994 contained the "independent spring restraint feature" of the '828 patent.

In granting summary judgment, the district court concluded that "the claimed invention of M–3 had been sold by Cargo at least one year prior to the application for patent," *M–3 & Assocs., Inc. v. Cargo Sys., Inc.*, No. 3:99CV547 AS, slip op. at 11 (N.D.Ind. Aug. 11, 2000), invalidating all the claims of the '828 patent under 35 U.S.C. § 102(b).

## III

M–3 contends that there is a genuine dispute of material fact as to whether Cargo's Model A contains the key limitation: "the counterbalancing means ... wherein each spring element is tensioned so as to be able to independently restrain the door against opening once the door is in a closed position" (the "independent spring restraint feature"). '828 patent, col. 4, I. 65—col. 5, I. 3.

First, we must construe the key limitation in claim 1 of the '828 patent. Claim construction is a matter of law that we review without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc). Claim language must be interpreted in light of the specification and prosecution history. *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301, 57 USPQ2d 1813, 1816 (Fed.Cir.2001).

▮ M–3 suggests that the claim should be construed so that the springs act to restrain the door against any "opening." Appellant's Reply Br. at 8–9. On the other hand, Cargo argues that each spring must be independently tensioned so as to "limit or restrict the door from opening once it is closed," but not "to restrict the door from any movement whatsoever." Appellees' Br. at 20–21. We agree with Cargo's claim interpretation.

The language of the claim requires that the device "restrain the door against opening." The dictionary definition of "restrain" includes both "prevent" and "moderate or limit the force." *Webster's Third New International Dictionary* 1936 (1968). This definition supports the view that the claim limitation encompasses restricting the door from opening, without restraining the door against *any* opening. The specification also indicates that Cargo's broader definition was valid:

> [The] door remains *partially counterbalanced* even in the event that one spring breaks so that a *closed door will remain closed instead of dropping immediately to the open position.* Furthermore, if a spring breaks when door is being opened or closed, *door will open to the open position, but with less force* than would be the case using a single spring system, an important safety feature of the present invention.

'828 patent, col. 4, II. 30–37 (numbering omitted) (emphasis added).

The specification focuses on the safety aspect of decreasing the force associated with opening ramp doors. As long as the door is at least partially counterbalanced against opening, this feature is achieved. In light of the claim language and the specification, we construe the "independent spring restraint feature" as requiring two springs that are independently sufficient to counterbalance the door and re-

duce the force with which the ramp door swings open, although each spring acting alone does not have to restrict the door from any movement whatsoever.

## IV

█ M–3 urges that the alleged prior art product (Cargo's model A) differs from M–3's claimed invention, contending that the alleged prior art product does not contain the "independent spring restraint feature," and the latter product does. We disagree.

The record evidence shows that Cargo's Model A satisfied the key limitation of the '828 patent. M–3's theory is that Cargo's Model A did not satisfy the claim limitation because slackness in the cable did not provide the necessary restraint. To determine that the limitation was present in Cargo's Model A, the district court relied on Cargo's installation instructions and the testimony of John Coble, CEO of Cargo Systems, Inc. *M–3*, slip op. at 9–10. The Coble affidavit shows that Cargo sold a dual-spring Ramp–Heister to Haulmark in 1994. Coble Aff. ¶ 8. Cargo's installation instructions accompanying the 1994 device identified the appropriate number of turns of the springs to counterbalance doors of various ramp heights. The Coble affidavit also confirms the information provided in the instructions. *Id.* ¶ 5. However, neither the instructions nor the affidavit sheds any light on whether Cargo's Model A satisfied the limitation in claim 1. Videotape A, which was made part of the

summary judgment record by the patentee, does show the restraint feature in operation. In Cargo's Model A, the 1994 device, the cable and springs do not actually restrain the door against opening until the door has opened several inches, indicating a somewhat slack cable. Although the videotape does not show Cargo's Model A acting identically to M–3's claimed invention with respect to the tension of the cables, the district court correctly found that Cargo's Model A satisfied the disputed claim limitation of the '828 patent, counterbalancing the door and reducing the force with which the ramp door swings open. There is no contrary evidence in the record.

## V

█ M–3 urges that the district court improperly excluded the audio portions of two videotapes and paragraph 3 of the Wilson declaration, demonstrating that there was a genuine issue of material fact regarding whether the key limitation was present in Cargo's Model A.

"We review evidentiary rulings of the district court for abuse of discretion, and interfere with its judgment only if an erroneous ruling prejudiced substantial rights." *Applied Med. Res. Corp. v. United States Surgical Corp.*, 147 F.3d 1374, 1380, 47 USPQ2d 1289, 1293 (Fed.Cir. 1998), *cert. denied*, 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999).[1] The videotapes contained audio commentary of Mr. Wilson, the president of M–3, and Mr.

---

1. This court applies the law of the regional circuit when we review evidentiary rulings of the district court. *See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308, 60 USPQ2d 1161, 1171 (Fed.Cir. 2001) ("Evidentiary rulings ... are not unique to our jurisdiction and, accordingly, we review them under the law of the [regional circuit]."). Seventh Circuit law requires that we review evidentiary rulings for an abuse of

discretion. *See Rehling v. City of Chicago*, 207 F.3d 1009, 1017 (7th Cir.2000) ("We review the rulings of a district court regarding admissibility of evidence for an abuse of discretion.... If we determine that the district court has abused its discretion in making an evidentiary ruling, we nonetheless affirm the district court if the erroneous ruling is determined to be harmless.") (citations omitted).

Fountain, M–3's attorney, describing the operation of Cargo's Model A as compared with the claimed invention. Whether or not the district court properly granted Cargo's motion to strike, none of this excluded evidence would have affected the outcome of the motion for summary judgment because the excluded material confirmed the on-sale bar. The audio commentary by Mr. Wilson and Mr. Fountain admitted that Cargo's Model A limited the force of the door after the door had initially opened several inches. Moreover, in paragraph 3 of Wilson's declaration, Mr. Wilson, while stating that Cargo's Model A "did not have the spring elements tensioned so as to be able to independently restrain the door against opening once the door is in a closed position," also conceded that there is at least a partial restraint, stating that "in [Cargo's Model A] the drum does not move at all until the door is opened several inches, indicating a significant amount of slack in the cable tension." Wilson Decl. ¶ 3. Applying the appropriate interpretation of the key limitation, both the audio commentary and Wilson's declaration support the district court's finding that Cargo's Model A satisfied the key limitation of claim 1 of the '828 patent. Therefore, we conclude that any error the district court made in excluding the evidence did not prejudice M–3's rights and would be at most harmless error.

## VI

Lastly, M–3 urges that the district court should not have considered the evidentiary materials contained in Cargo's summary judgment reply brief because they raised new allegations and did not give M–3 a chance to respond. However, we agree with Cargo that this evidence submitted with the reply brief only responded to the issues raised by appellant, rather than raising new issues. *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 n.* (7th Cir.1996). As such, there is no procedural unfairness.

## CONCLUSION

For the foregoing reasons, we affirm.

## COSTS

No costs.