**T.F.H. PUBLICATIONS, INC.,**
**Plaintiff–Appellant,**

v.

**HARTZ MOUNTAIN CORPORATION,**
**Defendant–Appellee.**

No. 02–1460.

United States Court of Appeals,
Federal Circuit.

DECIDED: May 30, 2003.

Before LINN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PROST, Circuit Judge.

LINN, Circuit Judge.

In this patent infringement case, T.F.H. Publications, Inc. ("T.F.H.") appeals from the dismissal with prejudice of its Complaint by the United States District Court for the District of New Jersey. *T.F.H. Publ'ns, Inc. v. Hartz Mountain Corp.,* No. 00–5582(HAA) (D.N.J. May 16, 2002).

We hold that the district court correctly construed the claim limitation "formed by the reaction of aliphatic dicarboxylic acid and aromatic diisocyanate" to require the direct reaction of an aliphatic carboxylic acid with an aromatic diisocyanate. Because T.F.H. concedes that the district court's construction of this limitation renders the claims invalid and forecloses any question of infringement, we need not and do not address T.F.H.'s other claim construction arguments. The district court's dismissal of the Complaint is accordingly *affirmed.*

## I

United States Patent No. 4,771,733 ("'733 patent"), entitled "Chewable Object Having Flavor or Odor Extract Incorporated Therein," was issued to Herbert R. Axelrod on September 20, 1988. The patent describes chewable, flavored toys for dogs. Claim 1, the sole independent claim, is reproduced below; the claim limitation principally at issue in this appeal is emphasized.

A durable, chewable object consisting essentially of a *polyurethane elastomeric body formed by the reaction of aliphatic dicarboxylic acid and aromatic diisocyanate* and having from about 0.2 to about 2.5% by weight of an aqueous-based flavor or odor extract incorporated into the body after the forming thereof.

T.F.H., the owner of the '733 patent, filed a patent infringement suit against Hartz Mountain Corporation ("Hartz"), alleging that its "Chew 'N Clean" line of dog toy products infringed all of the patent claims. Hartz counterclaimed, seeking a declaratory judgment that the '733 patent was invalid for failure to satisfy the conditions of patentability set forth in, *inter alia,* 35 U.S.C. § 112.

The district court held a *Markman* hearing, and subsequently issued a claim construction order. *T.F.H. Publ'ns, Inc. v. Hartz Mountain Corp.,* No. 00–5582(HAA) (D.N.J. Jan. 17, 2002) (*"Order"*). The court construed the claim limitation "formed by the reaction of aliphatic dicarboxylic acid and aromatic diisocyanate" to mean that "the polyurethane must be formed by the reaction of an aliphatic dicarboxylic acid directly with an aromatic diisocyanate." *Order,* slip op. at 2. The court also construed additional claim terms appearing in claim 1 and dependent claim 6. In the opinion setting forth the grounds for its claim construction, the district court noted that its construction of the "formed by the reaction of aliphatic dicarboxylic acid and aromatic diisocyanate" limitation of claim 1 "renders the claim invalid," but the court did not enter a judgment of invalidity. *T.F.H. Publ'ns, Inc. v. Hartz Mountain Corp.,* No. 00–5582(HAA), slip op. at 14 (D.N.J. Jan. 17, 2002).

T.F.H. appeals from the claim construction order and from the dismissal of its infringement claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II

T.F.H. argues that the district court erred in its construction of the claim limitation "a polyurethane elastomeric body formed by the reaction of aliphatic dicarboxylic acid and aromatic diisocyanate" in Claim 1. The district court construed this limitation to mean that "the polyurethane must be formed by the reaction of an aliphatic dicarboxylic acid directly with an aromatic diisocyanate." *Order,* slip op. at 2. The parties agree that polyurethane cannot in fact be formed by the direct reaction of an aliphatic dicarboxylic acid and an aromatic diisocyanate. In order to produce a polyester polyurethane, the dicarboxylic acid is first reacted with a dihy-

droxy compound, and the resulting polyester is then reacted with the isocyanate to produce the polyurethane. T.F.H. argues that the limitation should have been construed to mean the two chemicals are simply "reacted in the course of forming a polyester polyurethane." We disagree.

The process a court follows in construing claims is well known from our precedent, and we will touch on it only briefly here. Claim terms are to be given their ordinary and accustomed meaning. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989, 50 USPQ2d 1607, 1610 (Fed.Cir.1999). Dictionaries may serve as "reliable sources of information on the established meanings that would have been attributed to the terms of the claims by those of skill in the art." *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203, 64 USPQ2d 1812, 1818 (Fed.Cir.2002). The context of the surrounding words in a claim must be considered in determining the ordinary and customary meaning of a disputed claim limitation. *Brookhill–Wilk 1, LLC, v. Intuitive Surgical, Inc.*, 326 F.3d 1215, 1220, 66 USPQ2d 1517, 1520 (Fed.Cir. 2003). The intrinsic record, comprising the claims, the specification, and the prosecution history if in evidence, "must be examined in every case to determine whether the presumption of ordinary and customary meaning is rebutted." *Tex. Digital Sys.*, 308 F.3d at 1204, 64 USPQ2d at 1819. A patentee may rebut this presumption by "defin[ing] claim terminology in a manner inconsistent with its ordinary meaning," *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1301, 57 USPQ2d 1813, 1816 (Fed.Cir.2001), or by disclaiming a particular interpretation of a claim term during prosecution, *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 863, 20 USPQ2d 1252, 1262 (Fed.Cir.1991).

T.F.H.'s argument is based on what it characterizes as the "plain meaning" of the claim limitation; it contends that the district court erred "by changing the actual words used from 'and' to 'directly with.'" We find T.F.H.'s purported recourse to the plain meaning of the limitation incongruous with the construction it seeks. T.F.H. maintains that the limitation embraces a series of reactions involving aliphatic dicarboxylic acid and aromatic diisocyanate, in the course of which those two ingredients are not directly reacted with each other. In other words, T.F.H. asserts that "the reaction of A and B" means "reactions involving A and B, but not the direct reaction of A with B." For the following reasons, the plain meaning of the limitation will not bear this interpretation.

T.F.H. focuses its attention on the single word "and" and provides us with general dictionary definitions indicating the word can mean both "as well as" and "together with." By focusing on the meaning of the single word "and," T.F.H. loses sight of the context in which it is used in the claim expression at issue. The context in which a word is used in a claim cannot be ignored in determining the ordinary and customary meaning of a claim limitation containing that word. *See Brookhill–Wilk 1*, 326 F.3d at 1220, 66 USPQ2d at 1520.

The claim limitation "a polyurethane elastomeric body formed by the reaction of aliphatic dicarboxylic acid and aromatic diisocyanate" describes a product formed by "the reaction of" the two chemical compounds recited. The unambiguous meaning of the words themselves—"the reaction of" A "and" B—precludes any construction that might embrace the presence of an intermediate compound or intervening step. Simply put, there can be no reaction of A and B if A reacts first with an intermediary to form a different compound that

is then reacted with B. The dictionary definitions offered by T.F.H. in the abstract for the word "and" do not alter this conclusion. The claim thus necessarily covers the direct reaction of the recited two reactants: aliphatic dicarboxylic acid and aromatic diisocyanate. T.F.H. chose to employ these words and cannot argue that a proper construction requires us to ignore their plain meaning.

█ Neither does the intrinsic record support the construction T.F.H. advances. The record does not show that "the specification uses the words in a manner clearly inconsistent with the ordinary meaning." *Tex. Digital Sys.*, 308 F.3d at 1204, 64 USPQ2d at 1819. Indeed, the specification describes the polyurethane in terms similar to those of the claim limitation itself: "[t]he preferred polyurethane is a polyester polyurethane formed by the reaction of aliphatic polycarboxylic acids . . . and polyfunction isocyanates." '733 patent, col. 2, II. 34–37. Neither does the specification "us[e] words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Tex. Digital Sys.*, 308 F.3d at 1204, 64 USPQ2d at 1819.

### III

█ T.F.H. notes that the written description of the '733 patent refers to "polyester polyurethane" as a preferred material. It is also undisputed that the direct reaction of an aliphatic dicarboxylic acid and an aromatic diisocyanate produces a polyamide, not a polyurethane. T.F.H. conceded at oral argument that the claims would be invalid if we were to affirm the district court's construction of the "formed by the reaction of" limitation to require a direct reaction of the two listed components. T.F.H. argues that the district court's construction cannot be sustained as it both excludes the preferred embodiment and renders the claims invalid.

It is true that "construing a claim to exclude a preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364 (Fed.Cir.2003) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1578 (Fed.Cir. 1996)). It is also true that where claims are amenable to more than one claim construction, courts should not adopt a construction that would render a claim invalid. *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557, 37 USPQ2d 1609, 1617 (Fed.Cir.1996). In this case, however, the ordinary meaning of the terms used, together with the intrinsic record, render the claim limitation susceptible to only one construction. Thus, we must conclude that this is "the rare case in which such an interpretation is compelled." *Elektra Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1308, 54 USPQ2d 1910, 1914 (Fed.Cir. 2000). Moreover, we are unwilling to adopt T.F.H.'s reading of the claim limitation simply to save it from its injudicious word choices. To do so, we would have to rewrite the claim limitation to cover a series of reactions involving aliphatic dicarboxylic acid and aromatic diisocyanate, in the course of which those two ingredients are not directly reacted with each other. We may not rewrite claims to preserve validity in this manner. *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345, 51 USPQ2d 1377, 1379 (Fed.Cir.1999); *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584, 36 USPQ2d 1162, 1168 (Fed.Cir.1995) ("Although we construe claims, if possible, so as to sustain their validity, it is well settled that . . . courts do not redraft claims." (citations omitted)).

### IV

For the foregoing reasons, we hold that the district court did not err in construing

"a polyurethane elastomeric body formed by the reaction of aliphatic dicarboxylic acid and aromatic diisocyanate" to mean that "the polyurethane must be formed by the reaction of an aliphatic dicarboxylic acid directly with an aromatic diisocyanate." Based on T.F.H.'s concession at oral argument, we hold all claims of the '733 patent invalid under 35 U.S.C. § 112, paragraph 2, for failure to "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 (2000). In light of our holdings, T.F.H.'s other claim construction arguments are moot, and we decline to address them. We accordingly affirm the district court's dismissal of T.F.H.'s Complaint.