Joan N. BRIGGS et al., Plaintiffs,

v.

BROWN & WILLIAMSON TOBACCO CORPORATION, INC., Defendant.

Civ. A. No. 73-0551-R.

United States District Court,
E. D. Virginia,
Richmond Division.

May 19, 1976.

---

Robert B. Wallace, Alexandria, Va., Henry L. Marsh, III, Richmond, Va., Peter B. Work, Washington, D. C., for plaintiffs.

Francis V. Lowden, Jr., Hunton & Williams, Paul M. Thompson, Hill B. Wellford, Jr., Jack W. Burtch, Jr., Richmond, Va., Bernard M. Mamet, Chicago, Ill., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, black and female employees and applicants for employment for the defendant at its Petersburg, Virginia plant, bring this action pursuant to 42 U.S.C. §§ 1981, 2000e to redress alleged racial and sexual discrimination in defendant's employment practices. Plaintiffs allege that defendant engages in discriminatory hiring, discharge, promotion and compensation practices and seek declaratory, injunctive and other appropriate relief. Jurisdiction is attained pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5. The matter comes before the Court on plaintiffs' motion to certify the action as a class action pursuant to Fed.R.Civ.P., Rule 23(c)(1) and defendant's response thereto.

Plaintiffs complain of a broad assortment of alleged discriminatory policies and practices relating to hiring, conditions of em-

ployment, and termination.[1] In presenting these claims, plaintiffs propose to represent "all blacks and women who are now employed by defendant, who were or might have been employed by defendant since July 2, 1965, or who may be employed by defendant in the future." Defendant contends that class certification is inappropriate for claims arising from several of the contested practices, the maternity benefits issue is not properly before the Court, and that class membership for claims arising out of 42 U.S.C. § 2000e must be limited to persons who applied or were employed by defendant on or after 90 days prior to the filing of the earliest Equal Employment Opportunity Commission charge. The Court is of the opinion, however, that the matter is properly one maintainable as a class action under Fed.R.Civ.P., Rule 23(b)(2).

■ The burden of establishing the propriety of class certification falls on the moving party. *Poindexter v. Tuebert,* 462 F.2d 1096, 1097 (4th Cir. 1972); *Marshall v. Electric Hoses and Rubber Co.,* 68 F.R.D. 287 (D.Del.1975). Plaintiffs must thus satisfy the mandatory requirements of Rule 23(a), Fed.R.Civ.P. The degree to which the numerosity, typicality of claims, commonality of questions of law and fact, and the adequacy of representation is satisfied is largely a function of the size and scope of the claims to be adjudicated. Plaintiffs in this action, challenge defendant's hiring,

promotion, compensation, benefits and discharge policies on a sexual and racial basis. As such, the complaint involves " 'an across the board' attack on all discriminatory actions by defendant." *Barnett v. W. T. Grant Co.,* 518 F.2d 543, 547 (4th Cir. 1975) citing *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir. 1969).

■ It is alleged that defendant's Petersburg plant employs in excess of 1,400 black males, more than 500 black females, and more than 800 white females. Plaintiffs further allege that approximately 1,000 persons have been subjected to defendant's allegedly discriminatory hiring practices. Accordingly, the Court is satisfied that the class is so numerous that joinder of all members is impracticable. Fed.R.Civ.P., Rule 23(a). See *Cypress v. Newport News General and Nonsectarian Hospital Ass'n,* 375 F.2d 648 (4th Cir. 1967).

■ There are questions of law and fact common to the class. Specifically, there is a common question of law concerning the alleged racial or sexual discriminatory nature of the practices herein complained of. Defendant contends that plaintiffs have failed to establish that many of these practices are, in fact, discriminatory. The merit of such a contention must await a full development of the facts. The Court is not required to make, and indeed is precluded from making, a preliminary inquiry

---

[1] I. Discrimination against Women:
(A) Hiring Policies and Practices
(1) Use of a minimum height and weight requirement for hourly employment.
(B) Maternity Policies
(1) Failure to include maternity-related disabilities in accident and health plan.
(2) Use of various maternity leave/termination policies which adversely affect women's seniority rights.
II. Discrimination against Blacks:
(A) Hiring Policies and Practices
(1) Pre-hire inquiry into an applicant's arrest and conviction record.
(2) Pre-hire inquiry concerning an applicant's military discharge.
(3) Pre-hire inquiry concerning an applicant's credit.
(B) Termination Policies and Practices

(1) Use of a garnishment policy which requires termination of an employee after two or more garnishments.
III. Discrimination Applicable to Both Blacks and Females:
(A) Hiring Policies and Practices
(1) Pre-hire inquiry concerning an applicant's prior employment history.
(2) Use of unvalidated standardized tests.
(B) Employment Practices and Policies
(1) Use of promotion system which depends on the subjective discretion of white males.
(2) Use of unvalidated tests for entry into supervisory and craft positions and craft printerships.
(3) Use of policies and practices which have resulted in a substantially lower average wage rate for both hourly and salary black and female employees than for white male employees.

into the merits of a proposed class action for the purposes of certification. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176–77, 94 S.Ct. 2140, 2151–52, 40 L.Ed.2d 732, 747–748 (1974); *Miller v. Mackey International,* 452 F.2d 424, 427 (5th Cir. 1971).[2]

■ Typicality of the claims presented and the adequacy of representation may be treated together for the purposes of the instant action. Named plaintiffs include four black female applicants, one white former employee allegedly denied employment upon reapplication, and six black males who were former or are current employees of the defendant. Each has allegedly been adversely affected by one or more of the practices complained of in this action. A party, moreover, may "be aggrieved by employment practices to which he is not immediately subject". *Graniteville Co. v. EEOC,* 438 F.2d 32, 37 (4th Cir. 1971) citing *Carr v. Conoco Plastics, Inc.,* 423 F.2d 57 (5th Cir. 1970). The United States Court of Appeals for the Fourth Circuit has stated that when the plaintiff "directed his attack at discriminatory policies of defendant's manifested and various actions, and as one who has allegedly been aggrieved by some of those actions he has demonstrated a sufficient nexus to enable him to represent others who have suffered from different actions motivated by the same policies." *Barnett v. W. T. Grant Co.,* 518 F.2d 543, 548 (4th Cir. 1975). See also *Long v. Sapp,* 502 F.2d 34, 43 (5th Cir. 1974); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 341 (10th Cir. 1975); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421 (8th Cir. 1970). Thus, while the claims of particular individuals may vary in detail from one to another, the collective claims focus on particular policies applicable to each class member thereby satisfying the typicality requirement of Rule 23(a). Defendant has not challenged the adequacy of representation of a class by these plaintiffs. Given the diversity and numbers of the plaintiffs and exhibited vigor at which this litigation has thus far proceeded, the Court has no reservations concerning the adequacy of representation. Finally, actions brought pursuant to Title VII of the Civil Rights Act of 1964 fit comfortably within Rule 23(b)(2), Fed.R. Civ.P. and are classified as such. See *Barnett v. W. T. Grant Co., supra,* 518 F.2d 543 (4th Cir. 1975); *Rich v. Martin Marietta Corp., supra,* 522 F.2d 333 (10th Cir. 1975); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3d Cir. 1975).

Defendant argues that the claims relating to maternity leave and benefit policies should not be cognizable in this action. Defendant's position is bottomed on the fact that the initial charge of discrimination filed with the EEOC did not raise this issue.[3] More importantly, it was not the subject of the EEOC's investigatory and conciliatory efforts. It would be unfair, so defendant contends, to require an employer to litigate issues under Title VII and face potential back pay liability without the benefit of the EEOC's conciliation efforts. The importance of the Commission's conciliatory function was recently underscored when the United States Court of Appeals for the Fourth Circuit held that a portion of an action brought by an individual employee should be dismissed when the EEOC failed

2. [The record in this cause reference statistical data] is sufficient to indicate that the policies subject to the instant litigation have exhibited a disparate effect on both women and blacks. Such is enough to make out a prima facie case of discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280, 301 (1975); *Griggs v. Duke Power Company,* 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158, 164 (1971). While statistical evidence alone is sufficient to make out a Title VII case, the validity of and proper inferences to be drawn from any such statistics, of course, is a matter to be litigated at

trial. See *Barnett v. W. T. Grant Co.,* 518 F.2d 543, 549 (4th Cir. 1975); *Long v. Sapp,* 502 F.2d 34 (5th Cir. 1974).

3. While the issue was not pressed by plaintiffs, the applicability of 42 U.S.C. § 1981 to sex discrimination actions has apparently been foreclosed in this circuit. A recent opinion states unequivocally that "[R]elief under § 1981 is limited to correcting racial discrimination." *Patterson v. American Tobacco Co.,* 535 F.2d, p. 270, No. 75–1259 (4th Cir. 1976) citing *Willingham v. Macon Telegraph Publishing Co.,* 482 F.2d 535, 537 n. 1 (5th Cir. 1973).

to negotiate with a defendant. *Patterson v. American Tobacco Co.*, 535 F.2d 257, 272, No. 75–1259 (4th Cir. 1976). See also *EEOC v. Raymond Metal Products Co.*, 530 F.2d 590 (4th Cir. 1976). The *Patterson* case does, however, leave open the "possibility that exceptional circumstances may excuse a failure to attempt conciliation". 535 F.2d at 272. The Court is of the view that the instant case warrants such an exception.

Only recently the United States Court of Appeals held that a lawsuit filed pursuant to Title VII need not be restricted to the allegations contained in the charge itself and that any discrimination uncovered during the course of investigation may be the subject of adjudication. *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976). In that case, EEOC was permitted to bring an action to redress both alleged sexual and racial discrimination when the charge filed alleged only the latter. The Court of Appeals admittedly limited the broad sweep of its opinion by pointing out that the additional "discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed by the Act." *Id.*, at 366. Thus, while it is not clear that that Court would countenance the same broad expansion of issues to be resolved via litigation absent conciliation efforts, *EEOC v. General Electric Co., supra,* highlights the policy of allowing broad, rather than hyper-technically narrow, discrimination actions to effectuate the remedial purposes intended by Congress in the enactment of Title VII.

■ Plaintiffs contend that the above-quoted language from *EEOC v. General Electric Co., supra,* does not restrict this action for two reasons. First, it is plaintiffs' position that the Commission's failure to investigate the maternity issue was "a dereliction of its statutory responsibility." While it is unquestionably true that "[a] Title VII complainant is not charged with the Commission's failure to

perform its statutory duties", *Russell v. The American Tobacco Co.*, 528 F.2d 357, 365 (4th Cir. 1975), the situation in the instant litigation is not analogous. The charges filed with the EEOC in this matter raised a broad spectrum of issues. The sexual discrimination charges, however, related primarily to hiring practices. The Court cannot conclude that the failure of EEOC to uncover every conceivable discriminatory practice during the course of an investigation constitutes what plaintiffs describe as a "dereliction of its statutory responsibility". In the instant case the charges of sexual discrimination were filed by job applicants rather than current employees. Thus, the failure to investigate maternity benefits is understandable.

■ Plaintiffs correctly point out that conciliation is a statutory prerequisite to suits filed by the EEOC rather than to those filed by individuals. The Commission's failure to attempt conciliation is not a jurisdictional bar to an employee's action. *Russell v. American Tobacco Co.*, 528 F.2d 357 (4th Cir. 1975); *Johnson v. Seaboard Airline Railroad Co.*, 405 F.2d 645, 649 (4th Cir. 1968). The rationale is based on the Court's unwillingness to penalize an employee for the inability of the Commission to execute its statutory duties. See *Patterson v. American Tobacco Co., supra,* 535 F.2d, at 272 n. 14 (4th Cir. 1976).[4] This Court recognizes that the justification for circumventing the conciliation process is not as compelling when, as here, the EEOC did attempt conciliation on those issues presented in the initial charge. Ordinarily, to permit an individual to broaden the scope of the lawsuit and bring in issues neither investigated nor subject to conciliation efforts could well dilute the importance of the conciliatory functions of the EEOC and preclude an employer from the opportunity of resolving disputes without the burden of formal litigation. The Court is mindful as well of the holding in *Patterson v. American Tobacco Co., supra,* 535 F.2d, pp. 271–

---

4. The failure of the EEOC to attempt conciliation in every case does not reflect either indifference or incompetence. Any such failure is frequently attributable to inadequate staffing. See *Johnson v. Seaboard Airline Railroad Co.*, 405 F.2d 645, 649 n. 6 (4th Cir. 1968).

272, dismissing an individual employee's action against the union where the union had not participated in the conciliation procedures. As heretofore noted, however, *Patterson* envisions exceptions to the requirement of conciliation. The Court found one such exception in *EEOC v. Raymond Metal Products Co.,* 530 F.2d 590 (4th Cir. 1976). In that case, the Court stated that prejudice was the key consideration in determining whether or not an action should be expanded beyond the original charge when conciliation is not attempted. *Cf., EEOC v. General Electric Co., supra,* 532 F.2d, p. 371. An employer, unlike the instant defendant, may be prejudiced by the absence of conciliation efforts in several ways. First, an opportunity may be lost to amicably dispose of the claim in an informal setting. Secondly, as back pay liability is generally tied to the filing of the initial charge with the EEOC, an employer could face back pay liability for a period before it received any notice of the particular claim against it. See 42 U.S.C. § 2000e–5(g).

The danger of inflated back pay liability has however been significantly reduced by *EEOC v. General Electric Co.,* 532 F.2d 359 (4th Cir. 1976). In that case the Court indicated that back pay liability should be limited to the period of two years prior to the notice of the claim. *Id.,* p. 371. In the instant litigation, with regard to the maternity issue, that period would encompass the two years preceding the filing of this action. Thus defendant's potential back pay liability is limited to its notice of the claims against it.

 Additionally, the record herein reflects that on October 29, 1973, three days after the institution of this suit, the Court entered an order staying the proceedings for 60 days in order to permit the EEOC to pursue conciliation. Thus, defendants were afforded the opportunities to settle these claims and take advantage of the EEOC conciliatory mechanisms. No persuasive reason has been advanced by defendant warranting a conclusion that it was prejudiced by these post-filing conciliation attempts as opposed to the statutorily envisioned pre-filing negotiations. More significantly, however, is defendant's substantive position with regard to the maternity issue. Defendant has consistently maintained in this and other actions[5] that it intends to await a decision by the United States Supreme Court in the *Gilbert v. General Electric* case[6] and thereafter alter, if advised by that opinion, its maternity benefits policy. It would appear, therefore, that little if anything could be gained through conciliation. In short, defendant has been apprised of plaintiffs' claims relating to maternity benefits since October 26, 1973, and have had available the conciliatory services of the EEOC, but has chosen to await the Supreme Court decision in this area. In light of these circumstances, the Court concludes that the defendant has not been prejudiced by the absence of pre-litigation EEOC conciliation, and the maternity benefits issue may properly be litigated in this action.

 The final major contention between the parties relating to class certification involves the cut-off date to be used in defining class membership. Plaintiffs seek to include all black and female employees who were or might have been employed by defendant since July 2, 1965. Defendant seeks to limit the class to those who were or might have been employees 90 days prior to the filing of the first charge with the EEOC.[7] The Court is in agreement with

---

**5.** On July 10, 1975 an allegation by one Vernell M. Freeman was made contending that she was discriminated against by defendant's maternity leave and benefits policy. Defendant was served with discharge under date of July 23, 1975. (Case No. TDC 5–0976)

**6.** 519 F.2d 661 (4th Cir. 1975) *cert. granted,* 423 U.S. 822, 96 S.Ct. 36, 46 L.Ed.2d 39 (1975); 44 U.S.L.W. 3200 (1975).

**7.** At the time the initial charge was filed in this action, an employee was given 90 days from the alleged discriminatory event in which to file a charge with the EEOC. This 90-day period was later extended to 180 days by statutory amendment. 42 U.S.C. § 2000e–5(e).

378

plaintiffs in this regard. The focal point of the inquiry here is the applicable statute of limitations. Charges are considered timely so long as the alleged violation is ongoing. *Pacific Maritime Ass'n v. Quinn,* 491 F.2d 1294 (9th Cir. 1974); *Macklin v. Spector Freight System,* 156 U.S.App.D.C. 69, 478 F.2d 979, 994 (1973). Where, as here, plaintiffs challenge continuous discrimination rather than a single discriminatory act, the limitation periods applicable to Title VII and § 1981 do not bar the action. *Williams v. Norfolk & Western Railroad Co.,* 530 F.2d 539, 542 (4th Cir. 1975). See also *Johnson v. Railway Express Agency,* 421 U.S. 454, 467 n. 13, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295, 305 (1975) (dicta). Thus, all persons presently subject to the alleged discriminatory policies of the defendant and all persons who have in the past been so subjected and continue to be affected by the same, are proper parties to this action.[8]

■ There are, undoubtedly, some former black or female employees who ceased being adversely affected by the alleged discrimination at such time that their claims are no longer actionable. For example, a female applicant who was denied employment because of her sex on July 3, 1965, but found equivalent or superior employment on July 5, 1965 cannot fairly be said to be currently suffering from defendant's allegedly illegal hiring practices. Consequently, her action could not properly be made part of this lawsuit. There might also be, however, a former female applicant who was denied employment because of her sex on July 3, 1965 and has been unable to secure employment elsewhere despite diligent efforts. This woman may well be presently suffering from the allegedly illegal practice. At this juncture, it is impossible and unnecessary to distinguish between these two potential class members. Moreover, there may exist some potential class members not suffering a continued effect from the discrimination who can avoid the operation of limitation period because of their individual circumstances. See e. g. *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975). The determination of the entitlement of particular class members to back pay[9] is a matter more properly resolved after a determination of liability has been made. *United States v. United States Steel Corp.,* 520 F.2d 1043, 1051 (5th Cir. 1975); *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437, 443–45 (5th Cir. 1974). Cf. *Hairston v. McLean Trucking Co.,* 520 F.2d 226 (4th Cir. 1975); *Rock v. Norfolk & Western Railroad Co.,* No. 74–1788, Slip Opinion p. 9 (4th Cir. 1975). Accordingly, the Court will adopt the July 2, 1965 cut-off date suggested by plaintiffs. *Accord, Waters v. Heublein, Inc.,* 11 CCH E.P.D. ¶ 10,620 (N.D.Cal.1976); *Piva v. Zerox Corp.,* 70 F.R.D. 378, 44 U.S. L.W. 2305 (N.D.Cal.1975).

■ As the particular practices applicable to the claim of sexual discrimination are distinct from those alleged to involve racial discrimination, two subclasses will be designated. Should defendant be found to be engaging in discriminatory practices, additional subclasses may be necessary for determining entitlement to back pay.

An appropriate order will issue.

8. See *Williams v. Norfolk & Western Ry. Co.,* 530 F.2d 539 (4th Cir. 1975), wherein the Court permitted a plaintiff who had retired a year and one-half prior to filing a complaint with the EEOC to maintain his action.

9. The cut-off date is irrelevant, of course, with regard to injunctive and declaratory relief. It is consequential only with regard to back pay.