**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**UNITED VIRGINIA BANK/SEABOARD NATIONAL, Appellee.**

No. 76–1472.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 15, 1977.

Decided May 10, 1977.

---

Paul Mirengoff, Atty., E. E. O. C., Washington, D. C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, E. E. O. C., Washington, D. C., on brief), for appellant.

Paul M. Thompson, Richmond, Va. (Thomas J. Manley and A. Neal Barkus, Hunton & Williams, Richmond, Va., on brief), for appellee.

Before BUTZNER, RUSSELL and HALL, Circuit Judges.

PER CURIAM:

This appeal by the Equal Employment Opportunity Commission is from a judgment for the defendant, after trial, in its discrimination action against the defendant bank.

The record in the proceedings is represented by ten volumes of testimony and exhibits. The testimony and exhibits range generally over the employment practices of the defendant bank during a period of almost ten years. The number of employee applications during such period was in the thousands; the number of applicants singled out by the Commission as evidence of discrimination was proportionally minimal.

In 1973 and 1974, alone, the defendant received approximately 4058 employment applications and employed 412 new employees. The charge of discrimination seems to have been based on the treatment of but 34 black employment applications during the entire period.[1]

At the conclusion of all testimony, the District Court stated orally its findings of fact and conclusions of law. On these findings and conclusions, the Court granted judgment for the defendant.

The findings of fact, on which the judgment was granted, were phrased in broad conclusory terms and did not include any subsidiary findings which would give appropriate support to the Court's conclusory findings. Thus, in dismissing individual discrimination claims, the Court's finding was that "the Court is of the opinion that the plaintiff has not borne the burden imposed on it in the *McDonnell* case." [2] Previously in its opinion, the Court had stated the "requirements * * * of the *McDonnell* case" [3] but it did not indicate at any point in its opinion which requirement, as declared in *McDonnell*, was not proved by the plaintiff.

On the broader issue of an alleged pattern of discrimination in employment and assignment of blacks, when hired, to inferior positions,[4] the Court found that "the statistics presented by stipulation or by testimony [by the plaintiff] were sufficient to create a prima facie case" [5] but later declared bluntly, as a finding of fact, that the defendant had "borne the burden of rebutting by the greater weight of the evidence the statistical prima facie case presented by the plaintiff * * *." It seems to have based this ultimate factual finding on the bare subsidiary finding "that the evidence preponderates that the defendant has, during the time period involved in this action, affirmatively and aggressively sought out minority candidates for employment in all positions and that far from being neutral, the defendant has taken a leadership position in the community in seeking blacks to fill vacancies at all levels," and "that once having recruited and having hired blacks, the defendant has exercised diligence in its training of those blacks to fill the positions for which they were hired." These subsidiary findings unquestionably were relevant to the "ulti-

---

1. For purposes of comparison of treatment of allegedly similarly qualified whites, the Commission did rely on the applications of 50 white applicants over the period.

2. *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.

   It, also, made a later finding that the employment of Joan Covington, "in preference to Sandra Holland was a reasonable exercise of business judgment and was nondiscriminatory." The difficulty with this finding, so far as this appeal is concerned, is that it relates to Sandra Holland's May, 1969, denial of employment at Suffolk, which the Commission admits was not discriminatory, and not to her April, 1969, application at Norfolk, which the Commission claims was improperly denied.

3. As stated by the Court, these requirements were:
   "One: 'that he belongs to a racial minority';
   "Two: 'that he applied and was qualified for a job for which the employer was seeking applicants';
   "Three: 'that, despite his qualifications, he was rejected; and,'
   "Four: 'that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications' or equal qualifications."

4. It is conceded that there is no complaint of discrimination in defendant's promotion policies.

5. Even in making this finding, the Court did not indicate the nature of the statistics which gave rise to a "prima facie case." Both parties have attempted to use these statistics to bolster their contentions both on the *prima facie* showing and on the merits, but their arguments cannot substitute for findings by the trial court itself under Rule 52(a), Fed.R.Civ.P.

   In this connection, the Commission, after trial, prepared various tables and charts dealing with the bank's employment records. These were included in the Appendix, identified as Exhibits. Such tables and charts were never introduced at trial or submitted to the trial court. They should not have been identified in the Appendix as Exhibits submitted at trial. The Commission would justify their inclusion in the record on appeal on the ground that the charts and tables were prepared from material in the record. This, however, does not justify their inclusion in the Appendix under an identification as Exhibits.

mate" issue under consideration but they manifestly were insufficient in themselves, without more, to support a finding that the Commission's *prima facie* case had been rebutted by a preponderance of the evidence. The Court made no analysis of the statistical information or of the weight to be accorded it under the facts advanced by the bank, if any.[6] It engaged in no inquiry, either into the racial pattern generally of the community population or in the relative proportion racially of those in that community qualified by education or training for employment in any part of defendant's business.[7] Nor did it engage in any review of the employment records of the defendant, such as how many blacks and how many whites applied for employment over a particular period of time, how many in each group were employed, the disproportion, if any, in the employment of applicants from the two groups, or an explication of any fact which could have thrown light on either the justification or the impropriety of the particular denials of employment cited by the Commission in.support of its contentions of discrimination. In essence, there is an absence of that critical review of the relevant facts, culminating in a coherent body of factual findings, which is particularly called for in a discrimination case.

When the trial court provides only conclusory findings, illuminated by no subsidiary findings or reasoning on all the relevant facts, as was the case here, there is not that "detail and exactness" on the material issues of fact necessary for an understanding by an appellate court of the factual basis for the trial court's findings and conclusions, and for a rational determination of whether the findings of the trial court are clearly erroneous. It was to assure that "detail and exactness" in the trial court's findings as a predicate for intelligent appellate review that Rule 52(a) was adopted. The failure of the District Court to comply in this case with the basic requirement of the Rule for detailed findings of fact compels us to remand the cause for detailed findings of fact and conclusions of law by the trial court. *See, Patrician Towers Owners, Inc. v. Fairchild* (4th Cir. 1975) 513 F.2d 216, 219; *O'Neal v. Gresham* (4th Cir. 1975) 519 F.2d 803, 805.

At the hearing before us, there was considerable argument about the limitation on witnesses imposed by the District Court. We do not think the District Court abused its discretion in limiting the testimony as it did. However, on remand, both parties should be allowed to offer any additional evidence they may wish, provided the identity of any proposed additional witnesses be provided the opposing party, with adequate advance notice to permit proper discovery, if desired.

*REMANDED WITH DIRECTIONS.*

---

**6.** While it is well settled that statistics, either alone or in conjunction with other evidence, may be sufficient to make out a *prima facie* case, "lopsided ratios [in statistical compilations] are not conclusive proof of past or present discriminatory hiring practices," *United States v. Hayes International Corporation* (5th Cir. 1972) 456 F.2d 112, 120; and the "validity of and proper inferences to be drawn from any such statistics, of course, is a matter to be litigated at trial," *Briggs v. Brown & Williamson Tobacco Corp., Inc.* (E.D.Va.1976) 414 F.Supp. 371, 375, n. 2, and should, if trial is to the court, be covered by the Court's findings of fact and conclusions of law. Unfortunately, though, the finding of the trial court on the plaintiff's statistical evidence is not analytical but is summed up in the purely conclusory findings that "the defendant does operate an affirmative action plan that is in compliance with the spirit and the letter of the law" and "therefore * * * that the plaintiff is not

entitled to the relief sought on the basis of its statistical showing of imbalance between whites and blacks * * *."

**7.** Where the work requires special qualifications, it is proper to consider the ratio of qualified blacks and whites in the appropriate work force rather than the ratio of the gross percentage of blacks and women in the whole workforce, including unskilled labor. After all, in any discrimination case, "one element which remains essential is that the minority applicant be qualified for the position for which he applies." *Morita v. Southern Cal. Permanente Medical Group* (9th Cir. 1976) 541 F.2d 217, 219. *See, also, Logan v. General Fireproofing Company* (4th Cir. 1971) 521 F.2d 881, 883, and *Harper v. Mayor and City Council of Baltimore* (D.Md.1973) 359 F.Supp. 1187, 1205, *modified on other grounds* and *aff'd.* 486 F.2d 1134.